**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**CRIXENIA MAGPAYO,**

**Plaintiff,**

**v.**

**ADVOCATE HEALTH AND HOSPITALS CORPORATION,**

**Defendant.**

**Civil Action No. 16-cv-01176**

**Hon. Judge John Robert Blakey**

**DEFENDANT ADVOCATE HEALTH AND HOSPITALS CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Crixenia Magpayo failed to garner sufficient evidence to survive summary judgment on any of her claims. ***First***, Plaintiff's claim under the Illinois Wage Payment and Collection Act fails as a matter of law because Plaintiff has not established the existence of any contract or agreement as required to recover under the Act. ***Second***, Plaintiff's claims under the Fair Labor Standards Act and the Illinois Minimum Wage Law fail because she admits that Advocate paid her at an overtime rate when she worked more than 40 hours in a workweek. To be sure, Plaintiff was paid at an overtime rate for *over 400 hours of overtime.* ***Third***, to the extent she now seeks to run from her admission in her deposition that she was paid for her overtime, her claim fails because she failed to record or otherwise tell her managers at any time about this other overtime she now seeks. ***Fourth***, Plaintiff's claims under the FLSA and the IMWL fail for the additional reason that Plaintiff cannot show she worked over 40 hours in any given workweek and, even assuming Plaintiff's allegations as true, in most weeks, it makes no sense that any additional time spent during her meal breaks would exceed the 40 hour threshold.

## BACKGROUND

Plaintiff worked in Advocate Trinity Hospital's Emergency Room Department ("ED") from April 2012 to June 2012 and again from September 2012 until her employment was terminated in January 2016. (Facts ¶ 4.)[1] During this time, Plaintiff worked as a Nurse Clinician, an RN Registry, and a Registered Nurse Registry. (Facts ¶ 5.) For a very short period of time, Plaintiff was a full time employee and worked a set schedule. (Facts ¶ 6.) For the majority of her tenure, Plaintiff was "registry" and set her own schedule, but the specific number of hours she was assigned in any given week varied based on the ED's needs. (Facts ¶ 7.) Plaintiff sometimes worked close to 40 hours a week, some weeks over 40 hours and other weeks no hours. At one point, Plaintiff was only working once or twice a month. (Facts ¶ 8.)

The number of shifts Plaintiff was required to be available for work as a registry employee, her pay rate, and the number and types of holidays she was required to work each year were set forth in a document titled "Tiered Registry Requirements." (Facts ¶ 9.) That document did not indicate that Plaintiff would be paid for unrecorded work during meal breaks or post-shift, nor did it mention meal breaks, post-shift work, or pay policies. (Facts ¶ 10.) Plaintiff identifies no contract or agreement in which Advocate promised to compensate her for work during meal breaks or post-shift work that she did not record. (Facts ¶¶ 9-10, 12.)

During her employment, Plaintiff recorded her time through an electronic timekeeping system known as AdvocateWorks, which she could access using any computer in the ED. (Facts ¶¶ 13, 16.) Plaintiff understood that she was supposed to use AdvocateWorks to record her time, including any overtime. (Facts ¶ 17.) Plaintiff also knew that she had "primary responsibility for the accuracy of [her] time" and that she was required to sign off on her time card each week, a responsibility of which she was reminded multiple times during her tenure. (Facts ¶¶ 18-20.)

[1] All citations to "Facts" refer to Defendant Advocate Health & Hospitals Corporation's Statement of Undisputed Materials Facts, filed concurrently with this Motion.

Plaintiff testified that she failed to validate her time cards. (Facts ¶ 21.) Notwithstanding Plaintiff's failure to sign off on her time cards, every time she recorded overtime, Advocate paid her for that time at an overtime rate. (Fact ¶¶ 23, 48.) Plaintiff never noticed any inaccuracies in her time cards. (Facts ¶ 22.) Plaintiff was never threatened with discipline for recording overtime or otherwise disciplined for anything relating to timekeeping. (Facts ¶ 25.)

Plaintiff worked approximately 137 weeks between January 26, 2013 and her termination in January 2016[2], and her hours varied significantly in those weeks. (Facts ¶ 26.) For instance, Plaintiff worked 74 weeks with fewer than 25 hours and 17 weeks with 25 to 35 hours. (*Id.*) And, from March 2, 2015 to December 22, 2015, the date of her last shift in the ED, Plaintiff did not work more than one 12-hour shift each week. (*Id.*) Plaintiff also worked 25 weeks with over 40 hours, for which she was paid at an overtime rate. (*Id.*; Facts ¶ 23.) As such, only 21 workweeks are potentially even at issue in this case. (*Id.*)

In accordance with Advocate's Meal Period policy, Plaintiff was entitled to a 30-minute unpaid lunch break for each consecutive 7.5 hour shift she worked in Trinity's ED. (Facts ¶ 28.) Plaintiff understood that, "[i]f extenuating circumstances prevent[ed] [her] from taking a meal period, or if the meal period [wa]s interrupted for work reasons, it [wa]s [her] responsibility . . . to notify the manager or his/her designee of the reason." (Facts ¶¶ 31-32.) Advocate's Meal Period policy also established a process for the review and resolution of issues relating to meal periods, whereby Plaintiff was instructed first to report her concerns to her immediate supervisor, then to HR Direct, then to Advocate's Business Conduct Information Line. (Facts ¶¶ 38-40.) Advocate's Associate Handbook reminded Plaintiff that she should speak with her immediate supervisor if she had any concerns regarding her meal period, and also encouraged her to contact

[2] This 3-year period constitutes the maximum statutory period for Plaintiff's IMWL action.

HR Direct if the issue was not resolved. (Facts ¶ 41.) Plaintiff admits she had access to both the Meal Period policy and the Associate Handbook. (Facts ¶¶ 27, 33.)

Advocate's timekeeping system accounts for all time worked and provides meal periods to encourage employees to take their breaks. (Facts ¶¶ 28-30.) In the event that Plaintiff did not take a lunch break, she had several options to ensure she would be paid for that time. (Facts ¶¶ 34, 37.) For example, Plaintiff could manually override the lunch deduction by entering the "no lunch" clocking code upon clocking out. (Facts ¶ 34.) If Plaintiff forgot to enter that code, or otherwise needed to adjust her time to account for time worked during a meal period, she also could fill out a timecard/clocking adjustment form and the time would be added to her pay. (Facts ¶ 37.) Plaintiff was directed to immediately notify her supervisor if she believed she was underpaid so that "[a]ny underpayments [could] be promptly corrected." (Facts ¶ 43.)

Plaintiff testified that she never brought to anyone's attention or otherwise reported to anyone that she was not using the "no lunch" code, that she did not receive a meal period, or that she was working during her 30-minute meal period. (Facts ¶¶ 35, 42.) In addition, Plaintiff admits that she was never instructed not to use the "no lunch" code or to clock out and continue working. (Facts ¶¶ 36, 45.) Plaintiff also never notified her supervisor that she was clocking out and continuing to work, or that there were any underpayments in her pay. (Facts ¶¶ 44, 46.)

## ARGUMENT

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party's burden is "discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 325 (1986); *see also Strom v. Strom Closures, Inc.*, No. 06 C 7051, 2008 WL 4852998, at *1 (N.D. Ill. Nov. 7, 2008). A plaintiff opposing summary judgment must present admissible evidence showing a genuine issue of material fact; a scintilla of evidence, or evidence that is not significantly probative, is insufficient. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, a plaintiff "cannot rest on h[er] own deposition, or self-serving affidavits, to meet h[er] burden of proof." *Gilmour v. Abbott Labs.*, No. 03-C-9076, 2005 WL 947082, at *6 (N.D. Ill. Apr. 11, 2005).

**I. Plaintiff's Claims Under The IWPCA Fail As A Matter Of Law.**

The IWPCA does not establish a substantive right to overtime pay or any other kind of wage. *See Avorywoskie v. Kiana's Enter. Inc.,* No. 13-CV-6062, 2015 WL 4639438, at *4 (N.D. Ill. Aug. 3, 2015). Rather, the IWPCA only "entitles workers to the compensation owed under their employment agreement." *Almy v. Kickert Sch. Bus Line, Inc.*, 722 F.3d 1069, 1075 (7th Cir. 2013). "The plain meaning of the IWPCA indicates that pay is only recoverable under the statute when the employer has breached contractual obligations." *Reid v. Neighborhood Assistance Corp. of Am.*, No. 11 C 8683, 2013 WL 1087557, at *8 (N.D. Ill. Mar. 14, 2013), *aff'd*, 749 F.3d 581 (7th Cir. 2014) (internal citation omitted). For example, in *Avorywoskie v. Kiana's Enterprise Inc.*, the court granted summary judgment to the employer where the plaintiff "put forth no evidence of an employment contract or agreement entitling her to overtime pay for overtime hours worked." 2015 WL 4639438, at *4.

**A. Plaintiff And Advocate Did Not Enter Into Any Contract Or Agreement Regarding The Alleged Off-The-Clock Work At Issue.**

Plaintiff must prove not just any agreement, but that Advocate agreed to compensate her for the *specific* type of work at issue in her complaint. *See Oplchenski v. Parfums Givenchy, Inc.*, No. 05 CV 6105, 2009 WL 440959, at *9 (N.D. Ill. Feb. 19, 2009). Simply identifying a

contract or agreement between the parties is insufficient. An employee is entitled to payment only if in the alleged agreement, the employer agreed to compensate the employee for "the particular work allegedly performed." *Cohan v. Medline Indust., Inc.*, 170 F. Supp. 3d 1162, 1175 (N.D. Ill. 2016) (internal citation omitted).

Plaintiff can point to no contract or agreement in which Advocate agreed to compensate her for unrecorded work during meals or for post-shift work that she did not record. There is none. The only alleged agreement Plaintiff claims she had with Advocate is a certain Tiered Registry Requirements document. (Facts ¶ 12.) But that document did not promise Plaintiff payment for work during meal breaks that she did not record or for unrecorded post-shift work – the wages Plaintiff seeks in this lawsuit. (Facts ¶ 10.) The document merely sets forth the number and frequency of shifts that registry nurses at Tiers I, II, and III were required to be available for work, their respective pay rates, and the number and types of holidays that the nurses were required to work each year. (Facts ¶ 9.) *See, e.g., Camilotes v. Resurrection Health Care Corp.*, No. 10-CV-366, 2012 WL 2905528, at *6 (N.D. Ill. July 16, 2012) (granting summary judgment for employer where Plaintiffs presented no evidence "that Defendants agreed to pay Plaintiffs for 'all time worked,' even if that time was not recorded"); *Brown v. DS Servs. of Am., Inc.*, No. 15 C 1794, 2017 WL 1178229, at *10 (N.D. Ill. Mar. 30, 2017) (plaintiff "does not and cannot point to an employment agreement that she formed with [the employer], so her IWPCA claim cannot succeed").

### B. The Alleged Contract Plaintiff Identifies Does Not Demonstrate A Manifestation Of Mutual Assent Between The Parties.

The Tiered Registry Requirements document cannot serve as the "contract" or "agreement" required to state a claim under the IWPCA for the separate and independent reason that the parties did not mutually agree to its terms. In order to recover under the IWPCA, a

plaintiff must specifically allege the existence of a contract or agreement demonstrating "a manifestation of mutual assent from both parties about the purported terms of h[er] employment agreement." *Schneider v. Ecolab, Inc.*, No. 14 C 01044, 2015 WL 1402615, at *5 (N.D. Ill. Mar. 25, 2015) (internal citation omitted). A claim under the IWPCA can survive only if "the employer and employee agreed that the former would compensate the latter for the particular work allegedly performed." *Cohan*, 170 F. Supp. 3d at 1175-76 (internal citation omitted). Mutual assent does not exist where the plaintiff, alone, understood or expected that she was entitled to certain compensation. In *Schneider v. Ecolab, Inc.*, the court granted summary judgment to the employer where the plaintiff presented only self-serving testimony regarding "what he understood [his employer's] employees *told* him about the compensation he would receive." 2015 WL 1402615, at *5 (emphasis in original). According to the court, "[w]hat [the plaintiff] claims to have understood is only half the equation. . . . Ultimately, [the plaintiff's] testimony only really goes to (at best) *his* expectations." *Id.* (emphasis in original).

Here, Plaintiff cannot demonstrate the manifestation of mutual assent between the parties to the terms of the Tiered Registry Requirements document, nor any other alleged contract or agreement. Indeed, Plaintiff is unable to show that either party, whether individually or mutually, agreed to the document at all. While Plaintiff claimed that she signed the Tiered Registry Requirements document (Facts ¶ 11), neither party has any record of Plaintiff's signature. Plaintiff simply provides no evidence that she "inten[ded] to work for the company pursuant to the . . . terms" of that document. *Osorio v. The Tile Shop, LLC*, No. 15 C 15, 2015 WL 7688442, at *3 (N.D. Ill. Nov. 27, 2015). There also is absolutely no evidence that Advocate signed the document. Plaintiff's inability to prove that either party agreed to the document, or any other agreement on the relevant issues, is fatal to her claim.

The document also does not show any mutual assent between the parties related to unrecorded work during meals and post-shift work. Plaintiff asserts, with no factual or documentary support, her expectation that she would be paid irrespective of whether she recorded her time. But as in *Schneider*, Plaintiff's understanding of Advocate's purported obligation is insufficient. The plain language of the document makes no mention of payment for unrecorded work, nor does any other document. (Facts ¶¶ 9-10, 12.)

## II. Plaintiff's Claims Under The FLSA And The IMWL Fail As A Matter Of Law.

Under the Fair Labor Standards Act and the Illinois Minimum Wage Law, an employee is entitled to minimum wage and overtime pay of one-and-one-half times her regular rate of pay for hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1); 820 ILCS 150/4a(1). Neither the FLSA nor the IMWL recognizes a right of action for straight time pay, or pay for hours worked less than 40 hours per week, as long as the employee is paid above the minimum wage. *See Brand v. Comcast Corp.*, 135 F. Supp. 3d 713, 726 (N.D. Ill. 2015) (noting that the FLSA and the IMWL only require employers to provide overtime pay "for hours spent working beyond 40 hours in one week"). To prevail on her claim for unpaid wages under the FLSA and the IMWL, Plaintiff has the burden of proving that (1) she worked overtime without compensation and (2) Advocate knew or should have known about the overtime work. *See Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 176-77 (7th Cir. 2011); 29 C.F.R. § 785.11.

### A. Plaintiff Admits She Was Paid Overtime Whenever She Worked More Than 40 Hours In A Workweek.

Plaintiff's claim for alleged unpaid overtime under the FLSA and the IMWL fails due to her own admission that she was paid at an overtime rate for all hours that she worked over 40 in a workweek. In particular, Plaintiff testified during her deposition as follows:

> Q. But you were paid for hours over 40 in a workweek? When you worked more than 40 hours in a week, you were paid overtime for the hours over 40; correct?

A. Yes.

(Facts ¶ 23.) Plaintiff's admission is dispositive. She cannot escape it by attempting to create a disputed issue of fact at summary judgment. *See, e.g., Smith v. Dart,* No. 11 C 0014, 2012 WL 965115, at *2, n.1 (N.D. Ill. Mar. 21, 2012) (disregarding plaintiff's responses to defendant's statement of undisputed facts because "a party may not contradict his prior deposition testimony for purposes of creating a genuine issue of material fact on a motion for summary judgment").

**B. Plaintiff Cannot Show Advocate Knew Or Should Have Known Of Her Alleged Off-The-Clock Work.**

Beyond her admission, Plaintiff's claim fails because she cannot show that Advocate had actual or constructive knowledge of her overtime work. *See, e.g., Kellar*, 664 F.3d at 177 ("the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about"); *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 270-71 (7th Cir. 2014) (affirming summary judgment where plaintiff "offers no evidence that . . . he told anyone that he was working unauthorized overtime" and noting "[w]hile an employer cannot slyly sit back in order to reap extra work without pay, it has no obligation to pay for work it did not know about and had no reason to know about"); *Hurrle v. Reconstructive Hand to Shoulder of Ind. LLC*, No. 1:15-cv-00685, 2017 WL 264537, at *2 (S.D. Ind. Jan. 20, 2017). Generalized allegations of employer knowledge are insufficient to withstand summary judgment. *Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40, 2013 WL 3777251, at *9 (W.D. Wisc. July 19, 2013) (judgment for employer where "the evidence in the record does not support plaintiffs' . . . argument that it is 'obvious' that the lunch break restrictions and efficiency system would cause employees to work through their lunch breaks").

An employer does have a duty to "exercise its control and see that the work is not performed if it does not want it to be performed." 29 C.F.R. §785.13. But "if the employee fails

to notify the employer . . . of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]." *Harvill v. Westward Commc'n, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (internal citation omitted). Similarly, where an employee records her own time and "elects to under-report . . . her work time, the employer is not liable for the failure to pay unreported overtime under the FLSA." *Schremp v. Langlade Cnty.*, Case No. 11-cv-590, 2012 WL 3113177, at *3 (E.D. Wisc. July 31, 2012) (no liability where employer "had no reason to suspect Plaintiff was not accurately reporting his time" and employee admitted he would sometimes report overtime); *see also Bjornson v. Daido Metal USA, Inc.*, 12 F. Supp. 2d 837, 842 (N.D. Ill. 1998) (summary judgment for employer who had no knowledge to sustain FLSA and IMWL claims where plaintiff failed to record or submit his overtime hours for payment).

By way of example, in *Boelk v. AT&T Teleholdings, Inc.*, the court granted summary judgment for the employer because it had no reason to know that employees were not taking their lunch breaks, where it was undisputed that employees were paid for meal breaks that they recorded on their timesheets and also that employees were never discouraged from taking a full lunch or from working through lunch and recording that time. 2013 WL 3777251, at *10. According to the court, "the relevant knowledge for FLSA purposes is not 'I know that the employee was working,' but 'I know the employee was working and not reporting his time.'" *Id.*

**1. Plaintiff's Generalized Allegations Of Alleged Overtime Are Insufficient To Defeat Summary Judgment.**

Plaintiff has presented no evidence that would suggest Advocate was aware of her alleged unpaid overtime. Instead, Plaintiff makes only generalized allegations that Advocate should have known that she was working through her meal periods. However, like in *Boelk*, "speculation unsupported by any facts" is insufficient to constitute actual or constructive knowledge sufficient to sustain Plaintiff's claims at summary judgment, particularly where

Plaintiff admits that she was always paid for time that she recorded and also that she was never discouraged from, or disciplined for, recording all of her working time. 2013 WL 3777251, at *9. (Facts ¶¶ 22-23, 25. 48.) To the contrary, despite Advocate's numerous policies and procedures to ensure Plaintiff accurately recorded and was paid for all time worked, Plaintiff failed to report any of the post-shift work or work during meal periods that she now claims she performed. (Facts ¶¶ 42, 46.) *See, e.g., Joiner v. Bd. of Trustees of Flavius J. Witham Mem'l Hosp.*, No. 1:13-CV-555, 2014 WL 3543481, at *6 (S.D. Ind. July 17, 2014) (finding employer did not have sufficient knowledge to support Plaintiffs' claims of unpaid time where "[t]here is no record that the Plaintiffs used [Defendant's] time entry form to inform their supervisors that they missed a lunch, even though they used the forms to report other changes and knew it was available to report missed lunches"). Advocate simply had no reason to suspect both that Plaintiff was working during her lunch breaks *and* that she was not accurately reporting her time. *See Boelk*, 2013 WL 3777251, at *9; *see, e.g., Kellar*, 664 F.3d at 177 (affirming summary judgment for employer where defendant "had little reason to know, or even suspect, [plaintiff] was acting in direct contradiction of a company policy and practice" given that she "never told [defendant] that she was working overtime"); *Vince v. Ill. Cent. Sch. Bus LLC*, No. 09-C-5360, 2011 WL 578832, at *12-13 (N.D. Ill. Feb. 9, 2011) (summary judgment for employers where plaintiff made conclusory allegations that defendants failed to pay her for all hours worked).

**2. Advocate Had Policies And Procedures To Ensure Plaintiff Was Paid For All Work Performed.**

Where an employer has policies and procedures to ensure employees will be paid for all time worked but a plaintiff fails to avail herself of those procedures, summary judgment is proper. *Joiner*, 2014 WL 3543481, at *6 (granting summary judgment on FLSA claims where employer had policy and procedures for employees to notify managers of interrupted meal

breaks but, despite being aware of such procedures, plaintiff did not report missed lunches).

Here, Advocate had multiple policies to ensure Plaintiff was paid for all time worked, of which Plaintiff was well aware. For example, Advocate's Meal Period Policy instructed Plaintiff to notify a manager or use the "no lunch" clocking code if she was unable to take a 30-minute meal break. (Facts ¶¶ 31-32, 34, 38-41.) If Plaintiff forgot to use the "no lunch" code, or needed to adjust her time for any other reason, she could submit a timecard/clocking adjustment form so she would be paid for that working time. (Facts ¶ 37.) Plaintiff knew how to record her time and how to request additional payment or correct any time entries if there were discrepancies. (Facts ¶¶ 13-17, 27, 31-34, 37-41, 43.) Plaintiff admitted that she had access to the Meal Period policy and the Associate Handbook, which instructed her on how to adjust her pay if she did not get a lunch and directed her to immediately contact her supervisor if she noticed any underpayment. (Facts ¶¶ 27, 31-34, 37-41, 43.) With respect to post-shift work, Plaintiff testified that no one ever told her to clock out and to continue working. (Facts ¶ 45.) And, when Plaintiff worked past her scheduled shift while clocked in, she was always paid for that time. (Facts ¶ 48.) Indeed, Plaintiff admits that she was paid for all hours that she clocked in. (*Id.*) Plaintiff understood that she was responsible for the accuracy of her time and was reminded multiple times to sign off on her time records, but she did not notify management of any mistakes because she never noticed any inaccuracies in her time. (Facts ¶¶ 18-22.)

**3. Plaintiff Admits She Never Informed Her Managers Of Her Alleged Off-The-Clock Work.**

Plaintiff admits she never told any of her supervisors that she worked during her lunch break or after punching out at the end of her shift, as she now alleges she did. (Facts ¶¶ 42, 46.) Instead, she claims in conclusory fashion – without any evidentiary support – that her managers should have known she was working off-the-clock. *See, e.g., Boelk*, 2013 WL 3777251, at *9

(granting summary judgment for employer where "plaintiffs offer only speculation unsupported by any specific facts about working through lunch"). At best, Plaintiff alleges charge nurses knew she worked off-the-clock at the end of her shift. (Facts ¶ 46.) But complaints to coworkers alone, such as charge nurses, is not enough to establish constructive knowledge under the FLSA and the IWML. Plaintiff knew that she reported to managers, not charge nurses, and that managers, not charge nurses, reviewed and approved her time cards. (Facts ¶ 47.)

Plaintiff's failure to notify any managers of her alleged overtime is especially telling given that Plaintiff knew how to utilize Advocate's procedures when she needed to rectify an employment situation. For example, she contacted her managers if she needed modify her schedule or her job title. (Facts ¶ 49.) Plaintiff also knew how to utilize Advocate's grievance procedure, given that she grieved the discipline leading up to her termination and contacted human resources in connection with that discipline. (Facts ¶ 50.) Plaintiff knew of, and took full advantage of, these methods of raising complaints, yet never communicated to her managers that she allegedly was working off-the-clock. (Facts ¶¶ 42, 46, 49-50.)

#### 4. Plaintiff Was Paid Overtime For All Hours She Recorded.

Plaintiff also worked – *and was paid for* – overtime. During her tenure, Plaintiff recorded and received payment for over 400 hours of overtime. (Facts ¶ 24.) Plaintiff admits she received overtime pay for all hours she worked over 40 in a week. (Facts ¶ 23.) Plaintiff also admits that she was never discouraged from working overtime or disciplined with respect to timekeeping generally. (Facts ¶ 25.) Plaintiff's own admissions undercut any argument that she would have had a problem being paid for additional overtime worked. *See e.g. Bjornson*, 12 F. Supp. 2d at 840 ("[plaintiff's] alleged reluctance to submit overtime claims is flatly belied by his own demonstrated willingness and ability to do exactly that"). There is no reason Advocate should have suspected that it owed Plaintiff for unrecorded overtime.

### C. Plaintiff Has Not Identified Any Workweek In Which She Is Entitled To Overtime Pay And For Many Workweeks It Is Untenable.

Plaintiff's claims fail for the additional reason that she cannot identify any week in which she worked over 40 hours, and was not paid for that time. *See, e.g., Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 89 (2d Cir. 2013) ("tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime"). Plaintiff bears "the burden of proving that [s]he performed overtime work for which [s]he was not properly compensated." *Turner v. The Saloon Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010) (affirming summary judgment for employer, noting that "if [plaintiff] contends that his employer's records are not accurate[,] . . . then he must produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"). "A mere averment of hours worked does not constitute definite and certain evidence of hours worked." *Schremp*, 2012 WL 3113177, at *3; *see also Golden v. World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 699-700 (N.D. Ill. 2012) (judgment for employer where plaintiff offered "no foundational testimony or other evidence" indicating how alleged overtime was calculated).

Here, as in *Schremp*, Plaintiff asserted, "without any particulars or supporting documentation," that she "is owed a minimum of thirty (30) minutes of pay for each shift she worked." 2012 WL 3113177, at *3. (Facts ¶ 51). Plaintiff offers no evidence, however, beyond her own testimony, to support the number of hours she claims to have worked or which weeks the alleged off-the-clock work occurred. She cannot point to even one specific week in which she worked over 40 hours, given that she failed to maintain records or otherwise keep track of the alleged meal period and post-shift work that she now claims she performed. (Facts ¶ 52.) *See, e.g., Brown*, 2017 WL 1178229, at *9 (bare allegations and vague undocumented estimates do not survive summary judgment).

Not only has Plaintiff failed to identify ***any*** week in which Advocate failed to pay her overtime, Plaintiff's overtime claims also are logically untenable for the majority of workweeks during her employment. For example, for 74 of Plaintiff's 137 workweeks, she worked fewer than 25 hours each week. (Facts ¶ 26.) Even assuming Plaintiff worked through every 30-minute meal break and for one hour at the end of each shift – which Advocate disputes – Plaintiff still could not possibly have worked the over 40 hours required to state a claim under the FLSA and the IMWL. In fact, even assuming Plaintiff's allegations as true, it is mathematically impossible for Plaintiff to have worked over 40 hours in over 80% of her workweeks for which she has not already been paid overtime. (*Id.*) Advocate is entitled to summary judgment for all of the weeks in which Plaintiff could not have worked over 40 hours. *Sherman v. Premium Concrete Cutting, Inc.*, No. 01 C 7263, 2004 WL 1510030, at *3 (N.D. Ill. July 6, 2004) (employer did not violate FLSA by failing to compensate Plaintiffs for "gap time" where they were "paid well over the minimum wage requirements under the FLSA").

## CONCLUSION

For all of the reasons set forth above, Defendant respectfully requests that summary judgment be entered in its favor on all of Plaintiff's claims.

Dated: May 16, 2017

Respectfully submitted,

s/ Efrat R. Schulman

Michael J. Gray (06210880)
mjgray@jonesday.com
Efrat R. Schulman (06280999)
eschulman@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL 60601.1692

*Counsel for Defendant Advocate Health and Hospitals Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify I electronically filed a true and correct copy of the foregoing using the CM/ECF filing system, which will send a notice of electronic filing to the following attorneys for Plaintiff:

Maureen A. Salas
Douglas M. Werman
Sarah J. Arendt
WERMAN SALAS P.C.
77 W. Washington St., Suite 1402
Chicago, IL 60602

on this 16th day of May, 2017.

s/ Efrat R. Schulman
*One of the Attorneys for Defendant Advocate Health and Hospitals Corporation*